ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VI

| | | |
|---|---|---|
| MARÍA F. BERNABÉ COTTO<br><br>RECURRIDA<br><br>v.<br><br>SUCESIÓN DE LUIS ENRIQUE PARDO NIEVES compuesta por LUIS ENRIQUE PARDO DÍAZ Y RAFAEL ENRIQUE PARDO DÍAZ<br><br>PETICIONARIOS | KLCE202401175 | *Certiorari p*rocedente del Tribunal de Primera Instancia, Sala Superior de Aguadilla<br><br>Civil Número: AG2022CV01613<br><br>Sobre: División y liquidación de comunidad de bienes |

Panel integrado por su presidenta, la Jueza Ortiz Flores, la Jueza Aldebol Mora y la Jueza Boria Vizcarrondo

Ortiz Flores, **Jueza Ponente**

## RESOLUCIÓN

En San Juan, Puerto Rico, a 21 de noviembre de 2024.

Comparece ante nos la Sucesión del señor Luis Enrique Pardo Nieves, compuesta por el señor Luis Enrique Pardo Díaz y el señor Rafael Enrique Pardo Díaz (en adelante, parte demandada-peticionaria) mediante el presente recurso de *Certiorari* y nos solicitan que revoquemos la *Resolución* emitida por el Tribunal de Primera Instancia, Sala Superior de Aguadilla (TPI) el 25 de septiembre de 2024. El TPI declaró **No Ha Lugar** la *Moción de Sentencia Sumaria* presentada por la Sucesión del señor Luis Enrique Pardo Nieves, por entender que habían hechos que se encontraban en controversia.

Adelantamos que, por los fundamentos que exponemos a continuación, denegamos expedir el auto de *certiorari*.

**I**

El 31 de octubre de 2022, la señora María F. Bernabé Cotto (en adelante, parte demandante-recurrida) presentó una *Demanda* contra la Sucesión del señor Luis Enrique Pardo Nieves, compuesta por el señor Luis Enrique Pardo Díaz y el señor Rafael Enrique Pardo Díaz sobre

Número Identificador
RES2024_____

liquidación y división de comunidad de bienes.[1] En apretada síntesis, alegó que esta y el fenecido, señor Luis Enrique Pardo Nieves, convivieron en una relación consensual, creando a su vez una comunidad de bienes, durante el periodo de veintisiete (27) años hasta el día de su muerte. Añade que, durante todo el periodo en el cual convivieron como pareja, ella trabajó, compartió ideas y asistió al fenecido señor Luis Enrique Pardo Nieves en la administración de *Pardo Guest House*. Entre las labores que realizaba la demandante, esta alegó que se encontraban: (1) el trabajo y administración de la hospedería, incluso cuando el causante se encontraba fuera de la isla; (2) estaba encargada de cobrar el canon de arrendamiento de diez (10) apartamentos; (3) limpieza; y (4) acciones para la conservación, entre otras funciones. Arguyó, además, que el fenecido señor Luis Enrique Pardo Nieves adquirió, a nombre del codemandado señor Rafael Enrique Pardo Díaz, una casa de playa en el sector *Crash Boat* en Aguadilla con el capital que generaba en los apartamentos. Expresó que entre ambos acordaron radicar las Planillas de Contribución sobre Ingresos ante el Departamento de Hacienda de Puerto Rico como casados, durante todo el tiempo en el que ambos estuvieron en su relación. Arguyó que el capital levantado entre ambos asciende aproximadamente a un millón de dólares ($1,000,000.00), por lo que estimó que su participación indivisa en el caudal del causante es de la suma de quinientos mil dólares ($500,000.00).

En respuesta, la Sucesión del señor Luis Enrique Pardo Nieves, compuesta por el señor Luis Enrique Pardo Díaz y el señor Rafael Enrique Pardo Díaz, presentó su *Contestación a Demanda* y *Reconvención* el 1 de diciembre de 2022.[2] En esencia, la parte demandada presentó sus alegaciones responsivas y defensas afirmativas. Negaron que la parte demandante y el causante hayan constituido una comunidad de bienes, debido a que desde el inicio de su relación los bienes eran privativos y

---

[1] Anejo IV del recurso de *certiorari*, págs. 19-22.
[2] Anejo V del recurso de *certiorari*, págs. 23-26.

herencia del fenecido señor Luis Enrique Pardo Nieves. Por otra parte, solicitaron al TPI que dejara sin efecto el usufructo condicionado sobre la casa por parte de la señora Bernabé Cotto, pues alegaron que esta no estaba realizando las aportaciones económicas del mantenimiento de la casa, utilidades ni mucho menos el pago de las contribuciones territoriales del CRIM.

Luego de algunos trámites procesales, la parte demandada presentó una *Moción de Sentencia Sumaria* el 9 de julio de 2024.[3] En el referido escrito, alegó que procedía dictar sentencia de manera sumaria desestimando la causa de acción pues nunca existió un pacto implícito mediante el cual pudiese concluirse que ha existido una comunidad de bienes entre la señora Bernabé Cotto y el causante. Por otro lado, arguyó que la parte demandante no demostró una intención inequívoca de crear mediante pacto implícito una comunidad de bienes con el fenecido señor Luis Enrique Pardo Nieves.

Por su parte, la señora Bernabé Cotto presentó su *Oposición a Solicitud de Sentencia Sumaria* el 7 de agosto de 2024.[4] En resumen, arguyó que poseía un interés propietario sobre los bienes adquiridos durante su relación consensual con el causante y el aumento en valor en los bienes privativos de éste. Alegó que esto se debía a que existía entre ambos un pacto implícito estableciendo una comunidad de bienes.

Así las cosas, el 25 de septiembre de 2024, el Tribunal de Primera Instancia emitió una *Resolución* declarando **No Ha Lugar** la *Moción de Sentencia Sumaria* presentada por la parte demandada.[5] El foro *a quo* emitió las siguientes determinaciones de hechos como incontrovertidas:

1. Luis Enrique Pardo Nieves y María F. Bernabé Cotto nunca contrajeron matrimonio.

2. Pardo Nieves tenía varios apartamentos que ya existían y le pertenecían antes de iniciar su relación con Bernabé Cotto.

3. El nombre del edificio de los apartamentos que pertenecían a Pardo Nieves es Pardo Guest House. Este nombre nunca se ha cambiado ni incluye el nombre de

---

[3] Anejo VII del recurso de *certiorari*, págs. 145-157.
[4] Anejo VIII del recurso de *certiorari*, págs. 158-163.
[5] Anejo I del recurso de *certiorari*, págs. 1-15.

Bernabé Cotto.

4. Bernabé Cotto ayudaba a Pardo Nieves en la administración de los apartamentos.

5. El 29 de julio de 1986, Armando Pardo Cruz y Carmen Nieves Cerezo otorgaron una escritura de donación a favor de Pardo Nieves sobre una propiedad ubicada en el barrio Camaseyes de Aguadilla.

6. El 26 de diciembre de 2001, Armando Pardo González otorgó una escritura de cesión de derechos y acciones hereditarios a favor de Pardo Nieves.

7. El 17 de julio de 2021, Rafael Enrique Pardo Díaz otorgó una escritura de donación a favor de Pardo Nieves sobre una parcela ubicada en el barrio Borinquen de Aguadilla.

8. Bernabé Cotto no compareció como otorgante en ninguna de las escrituras antes referidas.

9. Rafael Enrique Pardo Díaz, hijo de Luis Enrique Pardo Nieves, tuvo una casa de playa a su nombre que se compró con dinero de Pardo Nieves.

10. De un estado de cuenta de First Bank, emitido el 29 de agosto de 2021, se desprende que existía una cuenta a nombre de Pardo Nieves y/o Bernabé Cotto y/o Carmen Nieves Cerezo.

11. Bernabé Cotto no tenía acceso a ninguna cuenta de banco de Pardo Nieves, con excepción a la única que compartía con este y la madre de este en el Banco Santander, posteriormente First Bank.

12. Pardo Nieves tenía una cuenta en una cooperativa a la cual Bernabé Cotto no tenía acceso.

13. Bernabé Cotto retiró el dinero de la cuenta de banco que compartía con Luis Enrique Pardo Nieves y la madre de esta.

14. El 10 de septiembre de 2014, Pardo Nieves suscribió y otorgó un testamento ológrafo, en el cual dispuso lo siguiente:

> "[…] de morir antes que mi compañera María Bernabé Cotto que ella tenga derecho a vivir la casa en que convivimos, aún después de morir su mamá (Elisa Cotto) el tiempo que ella entienda razonable y necesario para mudarse. […] Además [sic] mis heredero [sic] Luis E. Pardo Díaz y Rafael E. Pardo Díaz le otorgarán $30,000.00 (treinta mil dólares con .00/100) en efectivo de la herencia que ellos recibirán. Esto es aparte de los seguros de vida que poseo a nombre de ella. […]".

15. El 14 de diciembre de 2023, la Cooperativa de Ahorro y Crédito de Isabela en cumplimiento con una orden emitida por este tribunal, informó que la apertura de un certificado por la cantidad de $126,700.00 provenía de la cuenta de la madre de Pardo Nieves.

16. Bernabé Cotto no pagó patentes, arbitrios o impuestos al

Centro de Recaudación de Ingresos Municipales (CRIM) relacionados al negocio de los apartamentos.

17. Ninguna declaración informativa sobre los ingresos de esos apartamentos estaba a nombre de Bernabé Cotto.

18. Las patentes, los seguros de los apartamentos y el registro del CRIM estaban a nombre de Pardo Nieves y era este quien emitía los pagos.

19. Bernabé Cotto no firmaba los contratos de los apartamentos ni de la casa de playa.

20. Parte del alquiler de los apartamentos estaban bajo el programa de sección 8 y era Pardo Nieves quien firmaba esos contratos. Los cheques relacionados al programa se expedían a nombre de Pardo Nieves.

21. María Bernabé Cotto aportó los bienes muebles que tenía a los apartamentos y ayudaba en la decoración, pintura y limpieza de los apartamentos.

Por otro lado, enumeró los siguientes hechos que consideraba controvertidos, que impedían la solución de la causa de acción por vía sumaria, como sigue:

1. Cuáles fueron las aportaciones específicas de la parte demandante al negocio de apartamentos.

2. Cuáles fueron los servicios específicos prestados por la parte demandante al negocio de apartamentos.

3. Cuáles fueron las dinámicas entre la parte demandante y el causante con relación al negocio de los apartamentos.

El foro de instancia razonó que no procedía dictar sentencia de manera sumaria pues no se logró demostrar que no existía un pacto implícito entre la parte demandante y el causante.

Inconforme, la parte peticionaria acude ante nos mediante el presente recurso de *Certiorari* el 25 de octubre de 2024. En el referente escrito, la parte peticionaria señala la comisión de los siguientes errores:

Primer Error: Erró el TPI al declarar no ha lugar la moción de sentencia sumaria a pesar de la inexistencia total de prueba que demuestre que existe una controversia real sobre algún hecho material.

Segundo Error: Erró el TPI al declarar no ha lugar la moción de sentencia sumaria al concluir que existe controversia sobre aportaciones específicas ante la inexistencia total de prueba que demuestren su existencia.

Tercer Error: Erró el TPI al declarar no ha lugar la moción de sentencia sumaria al concluir que existe controversia sobre servicios específicos ante la inexistencia total de prueba que

demuestre su e(*sic*).

Cuarto Error: Erró el TPI al declarar no ha lugar la moción de sentencia sumaria bajo el fundamento de que las "las dinámicas entre la parte demandante y el causante" fuere motivo suficiente para establecer una controversia basada en la existencia de una comunidad de bienes.

Quinto Error: Erró el TPI al incluir como hecho incontrovertido el que la demandante-recurrida ayudaba(*sic*) en la administración de los apartamentos ante la inexistencia total de prueba que lo demuestre.

Sexto Error: Erró el TPI al concluir que la parte demandada no hizo referencia a prueba admisible alguna.

Por su parte, la parte recurrida presentó su *Oposición a Expedición del Auto de Certiorari* el 4 de noviembre de 2024.

Contando con la comparecencia de ambas partes, procedemos a resolver.

**II**

**A. *Certiorari***

El auto de *certiorari* es un vehículo procesal extraordinario que le brinda autoridad a un tribunal de mayor jerarquía para revisar las determinaciones de un tribunal inferior. *Rivera et al v. Arcos Dorados et al,* 212 DPR 194, 207 (2023) que cita a: *McNeil Healthcare v. Mun. Las Piedras I*, 206 DPR 391, 403 (2021); *IG Builders et al v. BBVAPR*, 185 DPR 307, 337-338 (2012). Aunque se trata de un recurso discrecional, existen unos parámetros que sirven de guía al momento de decidir si debemos, como foro revisador, expedir o denegar el auto. *IG Builders v. BBVAPR*, *supra*. De esta forma, el asunto que se nos plantee en el recurso de *certiorari* debe tener cabida dentro de alguna de las materias reconocidas en la Regla 52.1 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1 (Regla 52.1). En específico, la Regla 52.1 dispone lo siguiente:

> […]
> El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o **de la denegatoria de una moción de carácter dispositivo.** No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de

decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciaros, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. **Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.** […] (Énfasis nuestro.)

Conforme a lo dispuesto en la anterior disposición legal y la jurisprudencia interpretativa, nos corresponde realizar un análisis dual para determinar si se expide o no un auto de *certiorari.* Este examen consta de una parte objetiva y otra parte subjetiva. Por ello, en primer lugar, tenemos que analizar si la materia contenida en el recurso de *certiorari* tiene cabida dentro de una de las materias específicas establecidas en la Regla 52.1, toda vez que esta enumera taxativamente bajo qué supuestos se podrá expedir el auto de *certiorari*. En aquellos escenarios, en los que la materia no esté comprendida dentro de la citada regla, el tribunal revisor debe negarse a expedir el auto de *certiorari.*

Así las cosas, el primer examen al que debemos someter todo recurso de *certiorari* para determinar si debemos expedirlo es que debe tratar sobre alguna de las materias especificadas en la citada Regla 52.1 de Procedimiento Civil, *supra*. Este examen es mayormente objetivo. Por esto, se ha señalado que "los litigantes deben abstenerse de presentar recursos de *certiorari* para revisar órdenes y resoluciones de asuntos que no estén cobijados bajo las disposiciones de la Regla 52.1". Hernández Colón, *Derecho Procesal Civil*, 5ta ed., LexisNexis, San Juan, 2010, pág. 476.

Superada esta etapa, corresponde analizar si bajo la discreción concedida a este tribunal revisor mediante la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40 (Regla 40), debemos o no expedir el auto de *certiorari*. A esos fines, la Regla 40 establece los criterios que debemos tomar en consideración para determinar si expedimos o no un auto de *certiorari*, como sigue:

A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

B.  Si la situación de hechos planteada es la más indicada para el análisis del problema.

C.  Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

D.  Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

E.  Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

F.  Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

G.  Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Es decir, de acuerdo con lo dispuesto en la citada Regla 40, *supra*, debemos evaluar "tanto la corrección de la decisión recurrida, así como la etapa del procedimiento en que es presentada, a los fines de determinar si es la más apropiada para intervenir y no ocasionar un fraccionamiento indebido o una dilación injustificada del litigio." *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 97 (2008) que cita a *Negrón v. Srio. de Justicia*, 154 DPR 79 (2001). Así pues, la discreción judicial "no se da en un vacío ni en ausencia de otros parámetros",[6] sino que como Tribunal revisor debemos ceñirnos a los criterios antes citados. Si luego de evaluar los referidos criterios, este tribunal decide no expedir el recurso, podemos fundamentar nuestra determinación, mas no tenemos la obligación de así hacerlo.[7]

**_B. Sentencia Sumaria_**

En nuestro ordenamiento jurídico, la sentencia sumaria se rige por la Regla 36 de Procedimiento Civil de 2009, 32 LPRA Ap. V. R. 36. Este mecanismo "responde al propósito de aligerar la conclusión de los pleitos eliminando el juicio en su fondo, pero siempre y cuando no exista una legítima disputa de hecho a ser dirimida, de modo que lo restante sea

---

[6] *IG Builders et al v. BBVAPR*, *supra* que cita a *Rivera Figueroa v. Joe's European Shop*, 183 DPR 580, 596 (2011).
[7] 32 LPRA Ap. V, R. 52.1.

aplicar el derecho solamente". (Énfasis nuestro.) *Jusino et als. v. Walgreens,* 155 DPR 560, 576 (2001). Conforme la letra de la Regla 36. 1 de Procedimiento Civil, 32 LPRA Ap. V R. 36.1, para poder adjudicar en los méritos una moción de sentencia sumaria a favor del reclamante, lo que se requiere es que se presente "una moción fundada en declaraciones juradas o en aquella evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes, para que el tribunal dicte sentencia sumariamente" ya sea sobre la totalidad de la reclamación o parte de esta. En este sentido, un hecho material "es aquel que puede afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable." *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 110 (2015). Por ello, "[l]a controversia debe ser de una calidad suficiente como para que sea necesario que un juez la dirima a través de un juicio plenario". *Ramos Pérez v. Univisión*, 178 DPR 200, 213 (2010).

En armonía con lo anterior, la sentencia sumaria solo debe dictarse en casos claros. Si no existe certeza sobre todos los hechos materiales en la controversia, no procede que se dicte sentencia sumaria. Sin embargo, se ha establecido que la sentencia sumaria, "[p]rocede, aunque se hayan alegado hechos que aparenten estar en controversia, pero cuando el promovente logre demostrar preponderantemente, y mediante dicha prueba documental, que en el fondo no existe controversia sobre los hechos medulares." *Jusino et als. v. Walgreens, supra*, a la pág. 577. Ante esta situación, la parte promovida debe "defenderse de la misma forma, es decir, apoyándose a su vez de documentos u otra evidencia admisible." *Id.*

Asimismo, la Regla 36.3 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3, establece unos requisitos de forma a ser cumplidos por la parte promovente y la parte promovida. Si el promovente incumple con los requisitos de forma, "el tribunal no estará obligado a considerar su pedido.*"* *Meléndez González v. M. Cuebas, supra*, a la pág. 111. Del mismo modo, si el promovido es quien incumple dichos requisitos "el tribunal puede dictar

Sentencia Sumaria a favor de la parte promovente, si procede en derecho." *Id.*

En fin, toda vez que la sentencia sumaria es un remedio de carácter discrecional, "[e]l sabio discernimiento es el principio rector para su uso porque, mal utilizada, puede prestarse para despojar a un litigante de 'su día en corte', principio elemental del debido proceso de ley." *Mgmt. Adm. Servs. Corp. v. E.L.A.,* 152 DPR 599, 611 (2000). Siendo esto así, solo procede que se dicte la sentencia sumaria "cuando surge de manera clara que, ante los hechos materiales no controvertidos, el promovido no puede prevalecer ante el Derecho aplicable y el Tribunal cuenta con la verdad de todos los hechos necesarios para poder resolver la controversia." *Meléndez González v. M. Cuebas*, *supra*, a las págs. 109-110, que cita a: *Const. José Carro v. Mun. Dorado*, 186 DPR 113 (2012).

Según se ha reiterado jurisprudencialmente, este tribunal revisor se encuentra en la misma posición que el foro de primera instancia al determinar si procede o no una sentencia sumaria. Sin embargo, al revisar la determinación del tribunal primario, estamos limitados de dos maneras: (1) considerar solamente los documentos que se presentaron ante el foro de primera instancia; y (2) determinar si existe o no alguna controversia genuina de hechos materiales y esenciales, y si el derecho se aplicó de forma correcta. Esto es, estamos impedidos de adjudicar los hechos materiales esenciales en disputa. *Vera v. Dr. Bravo*, 161 DPR 308, 334-335 (2004). El deber de adjudicar hechos materiales y esenciales es una tarea que le compete al Tribunal de Primera Instancia y no al foro intermedio.

A esos efectos, el Tribunal Supremo de Puerto Rico estableció el estándar específico que debemos utilizar como tribunal revisor al momento de evaluar determinaciones del foro primario en las que se conceden o deniegan mociones de sentencia sumaria. En lo pertinente, dispuso que "[l]a revisión del Tribunal de Apelaciones es una *de novo* y debe examinar el expediente de la manera más favorable a favor de la parte que se opuso a la Moción de Sentencia Sumaria en el foro primario, llevando a cabo todas

las inferencias permisibles a su favor." *Meléndez González v. M. Cuebas*, *supra*, a la pág. 118. Además, reiteró que, por estar en la misma posición que el foro primario, revisaremos que la moción de sentencia sumaria y su oposición cumplan con los requisitos de forma recopilados en la Regla 36 de Procedimiento Civil. *Id.* Por lo cual, luego que culminemos nuestra revisión del expediente, de encontrar que en realidad existen hechos materiales y esenciales en controversia, debemos tener en cuenta el cumplimiento de la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V R. 36.4, y exponer concretamente cuáles hechos materiales están controvertidos y cuáles están incontrovertidos. Por el contrario, de resultar que los hechos materiales y esenciales realmente están incontrovertidos, entonces nos corresponde **revisar de *novo* si el foro impugnado aplicó correctamente el derecho a los hechos incontrovertidos**. *Id.*, a la pág. 119.

**III**

La parte peticionaria nos señala que erró el foro primario al declarar no ha lugar la moción de sentencia sumaria, presentada por esta, a pesar de la inexistencia total de prueba que demostrara que existía una controversia real sobre algún hecho material. En segundo lugar, la parte peticionaria nos plantea que incidió el foro sentenciador al declarar no ha lugar la moción de sentencia sumaria al concluir que existía controversia sobre aportaciones específicas ante la inexistencia total de prueba que demostrara su existencia. En tercer lugar, nos apunta que erró el Tribunal de Primera Instancia al declarar no ha lugar la moción de sentencia sumaria, al concluir que existía controversia sobre los servicios específicos ante la inexistencia total de prueba. En cuarto lugar, la parte peticionaria nos señala que erró el foro de instancia, al declarar no ha lugar la moción de sentencia sumaria bajo el fundamento de que las dinámicas entre la parte recurrida y el causante fuera motivo suficiente para establecer una controversia basada en la existencia de una comunidad de bienes.

Por otro lado, nos plantea la parte peticionaria que incidió el foro primario al incluir como hecho incontrovertido el que la parte recurrida ayudaba en la administración de los apartamentos ante la inexistencia total de prueba que lo demostrara. Finalmente, nos señala la parte peticionaria que erró el Tribunal de Primera Instancia al concluir que esta no hizo referencia a prueba admisible alguna.

En primer lugar, nos corresponde evaluar si el recurso ante nuestra consideración versa sobre alguna de las materias contenidas en la Regla 52.1 de Procedimiento Civil, *supra*. Al tratarse de una denegatoria de una moción de carácter dispositivo, en este caso una sentencia sumaria, tenemos jurisdicción bajo la Regla 52.1 de Procedimiento Civil, *supra.* Ahora bien, en segundo lugar, debemos analizar el asunto que se plantea ante nos tomando en consideración los criterios establecidos en Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*.

Luego de revisar *de novo* los documentos que acompañaron la moción de sentencia sumaria, presentada por la Sucesión del señor Luis Enrique Pardo Nieves, compuesta por el señor Luis Enrique Pardo Díaz y el señor Rafael Enrique Pardo Díaz, así como la moción de oposición, y la resolución recurrida, no vemos presente alguno de los criterios esbozados en la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*. Es decir, no encontramos que el foro de instancia hubiese actuado con prejuicio, parcialidad o con error craso y manifiesto. De igual forma, somos del pensar que no se justifica nuestra intervención en esta etapa del procedimiento, por tal razón procedemos a denegar la expedición del recurso de *Certiorari* para que continúen los procedimientos del manejo del caso en el Tribunal de Primera Instancia.

**IV**

Por los fundamentos que anteceden, denegamos expedir el auto de *certiorari*.

**Notifíquese.**

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones